*Formatted for Electronic Distribution*                                    *Not For Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

_____

**In re:**
**VERONICA D. REED,**
                **Debtor.**

_____

**VERONICA D. REED,**
                **Plaintiff,**

        **v.**

**SLM CORPORATION,**
                **Defendant.**

_____

Filed & Entered
On Docket

06/13/05

**Chapter 7 Case**
**# 04-10570**


**Adversary Proceeding**
**# 04-1025**

*Appearances:  John P. Riley, Esq.*
                *Montpelier, Vt.*
                *For the Debtor- Plaintiff*

*Thomas A. Little, Esq.*
*Burlington, Vt.*
*For the Defendant*

### MEMORANDUM OF DECISION
#### GRANTING DEBTOR A PARTIAL DISCHARGE OF STUDENT LOANS

In April of 2004, the Debtor filed a Complaint under § 523(a)(8) to determine the dischargeability of her student loan debt that is held and/or serviced by SLM Corporation.  After considering the papers filed by the Parties and the evidence presented during a half-day trial, the Court hereby determines that the Debtor is entitled to discharge a portion of the outstanding student loans she owes to SLM Corporation ("Sallie Mae") under 11 U.S.C. § 523 (a)(8), based upon an application of the standards set forth in Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987).

This Court has jurisdiction to determine the issue presented by this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I).

### THE BRUNNER STANDARD

The Second Circuit case, Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987), established the standard the Court must apply in this adversary proceeding.  Under Brunner, in order for a debtor to have his or her student loans discharged as an undue hardship, the debtor must establish:

> (a)   that the debtor cannot maintain, based upon his or her current income and expenses, a "minimal" standard of living if forced to repay the student loans ("minimal standard");
> (b)   that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the loan repayment period ("future prospects"); and
> (c)   that the debtor has made a good faith effort to repay the student loans ("good faith").

Id. at 396.

It is the debtor's burden to prove each of the three prongs of the Brunner test.  In re Lehman, 226 B.R. 805, 808 (Bankr.D.Vt. 1998).  The debtor must prove his or her case by a preponderance of the evidence.  In re Maulin, 190 B.R. 153 (Bankr.W.D.N.Y. 1995); see also, Elmore v. Massachusetts Higher Educ. Assist. Corp. (In re Elmore), 230 B.R. 22, 26 (Bankr. D. Conn. 1999). The determination of undue hardship, by nature, is case and fact-specific.  See, e.g., Maulin, 190 B.R. at 156. Further, "[a] determination of whether a student loan debt falls under the hardship provision of § 523(a)(8) for discharge is discretionary with the Bankruptcy Judge."  In re Lohman, 79 B.R. 576, 580 (Bankr. D. Vt. 1987).

Under §105 a bankruptcy court may grant a debtor a partial discharge of her student loans, however, not all courts have allowed a partial discharge.  See, e.g., In re Blair, 301 B.R. 181, 186 (D. Md. 2003); In re Roach, 288 B.R. 437, 447-48 (Bankr. E.D.La. 2003); Hemar Insurance Corp. of America v. Cox (In re Cox), 338 F.3d 1238, 1243 (11th Cir. 2003); reh'g and reh'g en banc denied, 82 Fed.Appx. 220 (11th Cir. 2003), cert denied, 541 U.S. 991 (2004); Pincus v. Graduate Loan Ctr, et al. (In re Pincus), 280 B.R. 303, 311 (Bankr. S.D.N.Y. 2002); In re Brown, 249 B.R. 525, 530-31 (Bankr. W.D.Mo. 2000). But see, In re Saxman, 325 F.3d 1168, 1173-74 (9th Cir. 2003) (concluding that "bankruptcy courts may exercise their equitable authority under 11 U.S.C. § 105(a) to partially discharge student loans" provided that the debtor is able to establish undue hardship as to that portion of the debt sought to be discharged); Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby), 144 F.3d 433, 439 (6th Cir. 1998); In re Kapinos, 243 B.R. 271, 275 n. 1 (W.D.Va. 2000) (stating that the majority of courts have concluded that Code § 523(a)(8) permits partial discharge).  Whether student loan obligations are partially dischargeable under § 523(a)(8) is a question of first impression in this District.[1]  The Court agrees with its sister court and holds that under its equitable powers, the Court has discretion to enter a partial discharge of student loan debt.  See, Kenny v. New Jersey Higher Education et al. (In re Kenny), 313 B.R. 100, 108 (Bankr. N.D.N.Y. 2004); Muto v. Sallie Mae, et al. (In re Muto), 216 B.R. 325, 331 (Bankr. N.D.N.Y. 1996).  A partial discharge is appropriate where, as here, the debtor has demonstrated that undue hardship would result if she were required to pay the entire obligation (applying all three prongs of the Brunner test) but the record also reflects that it would not be an undue hardship for the debtor to pay a portion of the student loan debt under the future prospects prong of the Brunner test.

### A.    The "Minimum Standard" Test

To prove the "minimum standard" component of the Brunner test, the Debtor must show she cannot maintain, based upon her current income and expenses, a "minimal" standard of living if forced to

---

[1]  The Court has previously acknowledged that under certain circumstances, a marital debt may be partially discharged under § 523(a)(15).  In re Rushlow, 277 B.R. 216, 224-25 (Bankr. D.Vt. 2002).  As the Court recognized in Rushlow, both provisions of § 523 reflect particular social policy priorities.  Id. at 222-23.  The Court finds that the social policy with regard to student loan obligations is not well served by the application of an all-or-nothing approach in all circumstances; it should be rejected where so warranted by the principles of equity.

repay her student loans.  The uncontroverted evidence demonstrates that the Debtor owes an outstanding balance of approximately $45,500 on the student loans she received in connection with her bachelor's degree in 1981 and her master's degree in 1993.  The Debtor testified that she worked in her area of specialty, human services, intermittently but was unable to retain full time employment in this area over an extended period of time due to various circumstances including the nature of human services work in general and her particular family obligations.  For example, when the Debtor received her degrees, her husband was a Vermont farmer and the Debtor had limited ability to travel to places of employment.

The Social Security Administration declared the Debtor to be disabled as of July 15, 2003, after she suffered a retinal hemorrhage as a complication of her diabetes which rendered her legally blind. The Debtor testified that she is able to see "some" but needs the assistance of magnifying aides to read and is too visually impaired to meet the requirements for a driver's license.

The Debtor's current sources of income are social security benefits and wages from her employment as a greeter at Wal-Mart.  The Debtor receives social security benefits for her own disability as well as in her capacity as a divorced widow.  The Debtor earns $8.45 per hour at Wal-Mart in a position which is capped at 34 hours per week.  As a part-time employee at Wal-Mart, the Debtor is not eligible for health care benefits; her primary employment benefit is the opportunity to participate in a stock purchase option.  The Debtor does participate in this program, having a *de minimus* amount deducted from each paycheck for the purchase of Wal-Mart shares.[2]  The Debtor testified that she will be eligible for federal government provided health care benefits through social security, in the form of Medicaid, upon the two year anniversary of her disability, i.e., in July of 2005.

The evidence of monthly budget figures which the Debtor presented at the hearing was quite vague, but the Debtor has since supplemented this data by filing amended schedules I and J.  The new schedules and the explanations attached thereto set forth her current income, her actual expenses, and projected changes in both with more specificity than was offered at the hearing.  Sallie Mae has filed no objection or response to this supplement to the record. The uncontroverted evidence shows that, absent any extraordinary monthly expenses, the Debtor's current income exceeds her current expenses by approximately $40.  This is not sufficient to amortize the outstanding student loan over the term of the loan.

The Court has examined the Debtor's list of current expenses to ascertain if her monthly expenses, and hence her computation of net disposable income, are reasonable.  It is the Court's conclusion that

---

[2]  Throughout the presentation of evidence, the Debtor argued that she does not fund any retirement accounts and should be allowed to do so under the Brunner standard.  The Debtor devotes only $15 per paycheck, before taxes, to fund her stock purchases.  The Brunner inquiry is fact intensive and under the facts of this case, where the stock purchase contribution is of such a *de minimus* amount, the Court will not examine whether contributions to a retirement program in general should be considered an essential element of a debtor's "minimal" standard of living.

none of the current expenses are unreasonable and there are no current expenses which if eliminated would allow the Debtor sufficient net disposable income to meet her student loan obligations. Therefore, the Court finds that based upon the Debtor's current income and expenses, she could not maintain a minimal standard of living if she had to repay her entire student loan debt. Therefore, the Court concludes that the Debtor has sustained her burden of proof on the first prong of the Brunner test.

### B. The "Future Prospects" Test

As the district court in Brunner recognized, the discharging of a student loan, "require[s] more than a showing on the basis of current finances that loan repayment will be difficult or impossible.... '[D]ischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment.'" In re Brunner, 46 B.R. 752, 755 (S.D.N.Y. 1985) (quoting In re Briscoe, 16 B.R. 128, 131 (Bankr. S.D.N.Y. 1981), aff'd 831 F.2d 395 (2d Cir.1987)). In adopting the district court's three-pronged "undue hardship" test, the Second Circuit stated: "Requiring evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time, more reliably guarantees that the hardship presented is "undue.'" Brunner, 831 F.2d at 396. The Debtor in the instant proceeding has established that her future prospects are not sufficient for her to be able to repay all of the subject student loan debt. It is significant to note, however, that the Debtor's counsel conceded during closing argument that the Debtor could repay a portion of her student loans if Sallie Mae would be amenable to a payment of approximately $40 per month. Based upon its analysis of the Debtor's future prospects, the Court agrees that the Debtor is able to repay a portion of the student loan obligation and therefore limits the discharge to a sum less than the total outstanding balance, as further described below.

This Court begins its analysis of the evidence on the future prospects prong of the test by determining whether the Debtor has shown any "additional circumstances impacting on the debtor's future earnings." In re Thoms, 257 B.R. 144, 149 (S.D.N.Y. 2001). Such circumstances have been described as scenarios where "the debtor experienced an illness, developed a disability, or became responsible for a large number of dependents after receiving the [student] loan." Id. For example, in Kelsey v. Great Lakes Higher Educ. Corp. (In re Kelsey), 287 B.R. 132 (Bankr. D.Vt. 2001), this Court found that the debtor suffered from significant medical and emotional maladies and further found that the evidence established that the Debtor would continue to suffer with these conditions. Id. at 142. Thus, the Court held that the debtor's conditions made it unlikely that she would be able to repay her student loans at any point in the foreseeable future without undue hardship. See id. at 144. Here, the Debtor has presented ample evidence of her current medical and financial circumstances, but presented no evidence that her situation will disable her from working at any particular point in the future.

4

The Debtor argues that because she is nearly 57 years old and suffers from diabetes and does not know how much longer she will be able to work she has satisfied the "future prospects" prong of the Brunner test.  Although the Debtor has speculated that her medical condition, namely her diabetes and her very limited vision, will negatively impact her future prospects, she has offered no medical evidence that her diabetes and impaired sight will be further exacerbated with age or prohibit her from working within any particular time frame.  Based upon the Debtor's earning capacity and projected income and expenses, however, even if the Debtor were able to work for the next five years, she would not be able to repay the outstanding student loan obligation in full.  Hence, the Court finds the Debtor has met her burden on this prong of the Brunner test.

This does not end the analysis.  While there is always a question of how long one will retain one's employment, and it is true that one's employment situation is made more precarious when one has physical limitations such as the Debtor's, there was no testimony that the Debtor did not expect to be able to work for at least the next five years.  Where, as here, it appears the Debtor's future prospects suggest that the Debtor may be able to repay a portion of the student loan obligation, principles of equity require the Court to assess the appropriateness of limiting the requested relief to a partial discharge. The Court has reviewed the record to determine whether the Debtor's net disposable income is likely to increase in the near future to a level sufficient for her to make a meaningful repayment.  Although the Parties did not address the Debtor's projected disposable income directly at the hearing, the record reflects that the Debtor has a couple of significant monthly expenses that will be satisfied in the near future.  First, the Debtor now has a $150 per month medical obligation that represents an installment arrangement the Debtor has with the physician who performed a laser treatment on her eyes.  The record is void of evidence as to when the Debtor incurred this $2,000 liability, and therefore the Court can presume only that the balance due on this liability was less than $2,000 as of the date of the hearing.  For purposes of this proceeding, the Court also presumes that the Debtor is current on her monthly installment payments and the Debtor will have satisfied this obligation within one year.  Additionally, the Debtor currently provides financial assistance to her college-aged daughter in the amount of $120 per month.  Her daughter will be a sophomore in the fall of 2005 and presumably will graduate from college in May of 2008.  While the Court finds it reasonable for the Debtor to provide financial support to her daughter while the daughter is in school, the Court does not consider support of this child to be a reasonable expense after the daughter has graduated from college, particularly given that there is nothing in the record to suggest the daughter is in any way disabled or unable to support herself.  See, generally, In re Rushlow, 277 B.R. 216, 222 (Bankr. Vt. 2002) (support of one's children - even when they are over the age of minority - deemed legitimate expense for purposes of computing disposable income, absent extraordinary circumstances or bad faith).

5

Thus, it is reasonable to project that the Debtor will have $150 per month reduction in expenses starting in June 2006 and an additional $120 per month reduction in expenses in May 2008.[3] Accordingly, based upon this budget analysis and the presumption that the Debtor will work for the next five years, it appears that the Debtor's future prospects for at least the next five years, will in fact improve to the extent of approximately $9,000.

The Court finds that it would be an undue hardship to require the Debtor to repay all of the student loan, however, it would not be an undue hardship to require her to repay up to $9,000 of the subject education debt.

### C.    The "Good Faith" Test

The Court finds that the Debtor has met the "good faith" prong of the Brunner test. "Good faith is a moving target that must be tested in light of the particular circumstances of the party under review." In re Maulin, 190 B.R. 153, 156 (Bankr. W.D.N.Y. 1995). The Debtor first took out student loans in 1980 for her undergraduate degree and took subsequent loans between 1984 and 1993 for her master's degree. The Debtor currently owes Sallie Mae approximately $45,500.00[4] for all of her outstanding student loans, which in the aggregate had an original principal balance of $26,500.[5] The Debtor introduced a statement that reflects her last payment was made in August of 2002 on her student loans that she first received in 1980, and Sallie Mae has not offered any evidence to the contrary. Likewise, neither Sallie Mae nor the Debtor presented evidence as to how much the Debtor has paid or when the Debtor has made payments on her student loans over the course of the lending relationship. However, the Debtor testified that she attempted and intended to re-pay her student loans, that she has made a diligent effort to find the highest paying employment she could notwithstanding her family and medical impediments, and that she has worked many kinds of jobs to generate income with which to pay her student loans from the date she graduated through 2002. The Court finds this testimony to be credible.

The Court finds the Debtor's conduct prior to filing bankruptcy demonstrated a good faith effort. Therefore, the Court finds that the Debtor has sustained her burden of proof on the third prong of the Brunner test.

### DISCHARGEABILITY

The Court finds that the Debtor has demonstrated that compelling her to repay the entire sum due on the subject student loans would impose an undue hardship on the Debtor and her dependents, based

---

[3]  Although the Debtor has described several other changes she anticipates in her budget, including an increase in her rent expense, a decrease in her social security income (to cover the Medicaid premium) and a decrease in her monthly medical expenses (due to Medicaid benefits), the Court does not factor them into this analysis since they appear to off-set one another, and together, to generate neither an increase nor decrease in the Debtor's projected net disposable income.

[4]  The statement introduced as Debtor's Exhibit 1, reflects a balance of $45,311.65 as of February 12, 2004 accruing interest at rates that vary from 4.05% to 7.0%. Sallie Mae did not present any independent evidence of the outstanding balance of the Debtor's student loans nor did it introduce any evidence of the Debtor's payment history on those loans.

[5]  More than half of the Debtor's loans ($15,000 in principal) are accruing interest at a rate of 7%.

upon the proof she submitted on all three prongs of the <u>Brunner</u> test. However, the record indicates that the Debtor will have sufficient net disposable income to pay a meaningful portion of this obligation in the foreseeable future. The interests of justice require that the Court determine whether a partial discharge is appropriate by examining how much the Debtor would be able to repay over the next five years (with that time period being specified since a chapter 13 plan may extend to a five year term). The Court finds that the Debtor has the ability to repay $9,000 over a period of five years and thus excepts this amount from the discharge to which she would otherwise be entitled under <u>Brunner</u>. The Court computes this non-dischargeable portion based upon the predictable satisfaction of two current obligations. First, starting in May 2006, the Debtor should be able to dedicate $125 per month toward repayment of the student loan debt to Sallie Mae. We estimate that by May 2006 the Debtor will have completed her $150 per month installments to the physician and presume that a small portion of this sum may be necessary for increased costs of living, thus leaving her $125 per month for payment toward the student loan. Then, in June 2008, when the Debtor's support obligations for her college-age daughter will have terminated, the Debtor will be in a position to increase the amount available she pays Sallie Mae to $250 per month (again leaving a slight amount of the increase to the Debtor for increases in the cost of living). The Court finds it reasonable to project these payments for five years (through June 2010), based both upon the maximum term of a chapter 13 plan and the Debtor's current medical condition. Therefore, the Court directs that upon receipt of $9,000 from the Debtor, the Defendant shall treat the Debtor's student loan obligations as paid in full.[6]

Since the Debtor has satisfied her burden of proof under the <u>Brunner</u> test, the remaining amount the Debtor owes to Sallie Mae (approximately $36,500) is hereby discharged, including any past due interest and any interest that might be attributable to the $9,000.

### CONCLUSION

For the reasons articulated above, the Court finds that the Debtor has established the standards set forth by the Second Circuit in <u>Brunner,</u> but in light of the Debtor's future prospects the Court declines to discharge all of the instant student loan obligations. The Court declines to discharge $9,000.00 of the subject student loan obligation and grants the Debtor's complaint with respect to the approximate $36,500 in remaining loan obligations to Sallie Mae.

This constitutes the Court's findings of fact and conclusions of law.

_____

June 13, 2005                                     Colleen A. Brown
Rutland, Vermont                              United States Bankruptcy Judge

---

[6] The Court makes no direction to Sallie Mae as to how to apportion and apply these payments, but directs that upon receipt of $9,000 total (no interest shall be accruing on this $9,000) the Debtor's student loans shall be deemed satisfied.